MORLEY, COMMISSIONER OF REVENUES *v.* SUN EXPORT COMPANY.

4-9121                                                      226 S. W. 2d 805

Opinion delivered February 13, 1950.

----

[2] Appellant's brief, p. 7.

O. T. Ward, H. Maurice Mitchell and Chas. E. Ramsey, for appellant.

House, Moses & Holmes and Catlett & Henderson, for appellee.

HOLT, J. Appellee, Sun Export Company, a corporation, brought this action seeking to restrain the Revenue Commissioner of Arkansas, from revoking its permit, as a "Wholesale Exporter," under the provision of Act 223 of the Arkansas Legislature of 1949. From the decree of the trial court permanently enjoining the Commissioner from "interfering in any manner with the business, or with the receipt and storage and selling of distilled spirits, wine and malt beverages for export, out of the State of Arkansas, by appellee, to restore said permit, and to sell any and all necessary stamps to be affixed to said export shipments by appellee, comes this appeal.

There is little, if any, dispute as to the material facts.

Act 223 became effective March 2, 1949, and § 1 provides: "(a) Any person, firm or corporation may apply to the Commissioner of Revenues for a permit, as a 'wholesale exporter' of spirituous liquors, to receive, store and sell for export purposes. * * * If the Commissioner shall grant the application, he shall issue a permit in such form as shall be determined by the rules and regulations established by the said Commissioner. Such permit shall contain the description of the premises to be used by the applicant, and in form and in sub-

stance shall be a permit to the person, firm, or corporation therein specifically designated to import, receive, store and to sell only for export out of the State of Arkansas to licensed wholesalers, of spirituous liquors of states other than Arkansas, for sale in states other than Arkansas, or retailers of spirituous liquors licensed under the laws of states other than Arkansas.

"(b) Any licensee, under such reasonable rules as may be adopted by the Commissioner of Revenues, as a wholesale exporter of spirituous liquors, shall sell, deliver, or transport only to (1) wholesalers or retailers or holders of special tax stamps issued outside of the State of Arkansas for export out of the State of Arkansas."

"Section 4. The Commissioner of Revenues shall have all power now vested in the Department of Revenues or the Commissioner of Revenues with respect to the issuance of the permits provided for or authorized by this Act, and to fully perform each and every duty imposed upon the Commissioner by this Act, or any other law of this State, and its own rules and regulations, and shall have the sole discretion of determining the advisability of issuing permits thereunder. Each applicant for a permit for wholesale export license under this Act shall pay the sum of Fifteen Hundred Dollars ($1,500) per annum for each permit so issued for the privilege of engaging in the wholesale export business, and no permit shall be transferable or assignable, and may be revoked for cause for violation of any rules of the Commissioner of Revenues or any laws of this State."

Thereafter, the Commissioner issued to the appellee, and three other dealers, export permits, appellee's was to expire June 30, 1950.

On October 10, 1949, after proper notice, the Commissioner conducted a hearing for the purpose of determining whether all of these permits should be revoked. At this hearing, two of the permit holders, located in Fort Smith, and another in Fayetteville which had not begun operations, voluntarily, surrendered their permits

and ceased to operate, and appellee's was revoked. The two Fort Smith exporters had been making most, if not all, of their sales to parties in Oklahoma.

Appellee, Sun Export Company, operated under its permit from Lake Village and while most of its sales went into the State of Mississippi, the record discloses that it made seven sales to Oklahoma parties. Both Oklahoma and Mississippi were, and are "dry" States by law.

Mr. H. M. Judd testified: "A. I am now keeping books on the export houses in the State. Q. In that capacity, do you receive copies of invoices of whiskeys shipped by the export houses from Arkansas into other states? A. I do. * * * Q. Mr. Judd, in your records do you find shipments of whiskey from the Sun Export Company billed into the State of Mississippi? A. Quite a few, yes, sir. Most of it goes into Mississippi. * * * Do you recall the date of the last shipment into the State of Mississippi? A. I believe it was the 4th or 5th of this month, one day last week. Q. Since you went back to your office a moment ago did you determine the exact number of shipments that the Sun had made into the State of Oklahoma? A. I did. Q. How many were there? A. Seven."

*Oklahoma Statutes Anno.*, Title 37, ch. 1, § 1, provide: "* * * It shall be unlawful for any person, individual or corporation to furnish, except as in this chapter provided, any spirituous, vinous, fermented or malt liquors, or any imitation thereof or substitute therefor, or to manufacture, sell, barter, give away or otherwise furnish any liquors or compounds of any kind or description whatsoever whether medicated or not which contain more than three and two-tenths (3.2%) per cent of alcohol, measured by weight, and which is capable of being used as a beverage, * * *; or to ship, or in any way convey, such liquor from one place within the state to another place therein except the conveyance of a lawful purchase as herein authorized; or to solicit the purchase or sale of any such liquors, etc. A violation of any provisions of this section shall be a misdemeanor, and shall be punished by a fine of not less than

fifty dollars ($50) nor more than five hundred dollars ($500), * * *. Section 38. * * * It shall be unlawful for any person in this State to receive directly or indirectly any liquors, the sale of which are prohibited by the laws of this State, from a common or other carrier. It shall also be unlawful for any person in this State to possess any liquors, the sale of which are prohibited by the laws of this State, received directly or indirectly from a common or other carrier in this State. This section shall apply to such liquors intended for personal use, as well as otherwise, and to interstate as well as intrastate shipments or carriage.''

The action of the Commissioner in revoking the permit of the appellee could be sustained by us solely because of the seven Oklahoma sales made by the appellee.

The statutes of Mississippi are similar in effect to the Oklahoma statutes, *Mississippi Code 1942 Anno.*, Vol. 2, ch. 3, §§ 2613-2642, inclusive.

Amendment 21 of the Constitution of the United States provides: ''Section 2. The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited.''

Following the effective date, December 5, 1933, of this Amendment 21, the following Federal statutes were enacted, *United States* Statutes at Large, Vol. 62, ch. 645, (June 25, 1948), § 1262, page 761. ''Whoever imports, brings, or transports any intoxicating liquor into any State, Territory, District, or Possession in which all sales, except for scientific, sacramental, medicinal, or mechanical purposes, of intoxicating liquor containing more than 4 per centum of alcohol by volume or 3.2 per centum of alcohol by weight are prohibited, otherwise than in the course of continuous interstate transportation through such State, Territory, District, or Possession or attempts so to do, or assists in so doing, shall (1) If such liquor is not accompanied by such permits, or licenses therefor as may be required by the laws of such State, Territory, District, or Possession or (2) if

all importation, bringing, or transportation of intoxicating liquor into such State, Territory, District, or Possession is prohibited by the laws thereof, be fined not more than $1,000 or imprisoned not more than one year, or both.

"In the enforcement of this section, the definition of intoxicating liquor contained in the laws of the respective States, Territories, Districts, or Possessions shall be applied, but only to the extent that sales of such intoxicating liquor (except for scientific, sacramental, medicinal, and mechanical purposes) are prohibited therein."

The very purpose of the above federal statutes was to enforce the provisions of Amendment No. 21, which, —*Tucker* v. *United States,* 123 Fed. 2d 280,—"* * * guarantees Federal protection to 'dry' states against liquor-law violations directed from outside their borders. The bill (above statutes) extends this affirmative protection to States which forbid all sales for beverage purposes of intoxicating liquor containing more than 4 per cent of alcohol by volume (3.2 per cent by weight)."

It thus appears that any sale made by appellee to an Oklahoma or Mississippi dealer for resale in those states does not have the sanction of the federal government, irrespective of any technical formalities that the government may have adopted in respect of a hands-off policy where the federal liquor tax has been paid, stamps procured, etc. Nothing that the government has done can have the effect of legalizing the sale of liquor in Oklahoma or Mississippi.

It will be noted that Act 223, above, specifically limits appellee's business "to import, receive, store and to sell only for export out of the State of Arkansas to licensed wholesalers, of spirituous liquors of states other than Arkansas, for sale in states other than Arkansas, or retailers of spirituous liquors licensed under the laws of states other than Arkansas."

We think it must be obvious, therefore, that the Legislature never intended that any sales be made by

appellee into any state, the laws of which prohibited the sale of liquor, or the licensing of wholesalers, retailers or any one else to deal in intoxicating liquors.

Mr. Hale Jackson, appellee's president, testified: "Q. In other words, you keep not only a record of the places to which shipments of whiskey are taken, but you know personally the people who receive those shipments? A. Yes, sir. * * * Q. Then the State of Mississippi gets a record of the sales you make into Mississippi, the State of Arkansas gets a record of the sales you make into Mississippi, and the Federal Government gets a record of the sales you make into Mississippi? A. Correct."

There are references in appellee's brief to a so-called "black market" tax in Mississippi and an inferential contention that in consequence of this legislation those who purchase liquors in Arkansas for sale in Mississippi have statutory protection. The Act in question is Ch. 139, *General Laws of Mississippi,* approved March 31, 1944. It is entitled: "An Act to discourage black markets by imposing a tax equal to ten per cent of the gross proceeds of sales, retail or wholesale, of any tangible property, articles or commodities whatsoever, the sale or distribution of which is prohibited by law." The Act does not repeal the existing liquor laws. The Black Market Tax presupposes the unlawful character of the business upon which the tax is levied, and is in no sense a condonation or license.

In these circumstances, we hold that the action of the Revenue Commissioner in revoking appellee's permit was clearly within the discretion given him under § 4 of Act 223. The act, as we construe it, neither directly, nor by implication, attempts to legalize shipments from this State into any State contrary to the Federal statutes, or the laws of such State. While our State Legislature is our policy making body, we certainly must assume that it was never its intention that this Sovereign State should, through its agents, or officials, become a party to any act involving, or contributing to, a violation of either Federal or State Statutes.

Accordingly, the decree is reversed and the order of the trial court is dissolved.